The appellant urges that the relationship thus existing between the plaintiffs' counsel and the court disqualified the justice from sitting in the case, within the provisions of section 46 of the Code of Civil Procedure. With this contention, as a matter of law, we do not agree; but under the circumstances we are of opinion that the ends of justice will best be attained by ordering a new trial. The case presented purely a question of fact, upon which there was a serious and close conflict of testimony. At the beginning of a trial the scales of justice must balance evenly, and at its conclusion, if there is a doubt as to which party has sustained the burden of proof, that doubt must be resolved in favor of the defendant. A careful examination of the testimony shows that such a doubt may well be said to exist, and while it is the prerogative of a trial court to determine, not only from the words, but as well from the demeanor and manner, of witnesses in giving their testimony, with whom the truth lies, nevertheless, lest a suspicion might arise that the relation between the trial court and the plaintiffs' attorney had unduly influenced the court in determining the case, we deem it advisable to exercise our right under section 326 of the Municipal Court act (Laws 1902, p. 1583, c. 580) and direct that the issues be retried.

The judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

(61 Misc. Rep. 268.)

WHITE et al. v. NORTH GERMAN LLOYD S. S. CO. et al.

(Supreme Court, Appellate Term.   December 24, 1908.)

1. SHIPPING (§ 104*)—CARRIAGE OF GOODS—CONTRACT FOR TRANSPORTATION.

A writing, delivered by defendant steamship company to plaintiff, reciting: "New York, 2/28/1907. Per steamer Kaiser Wilhelm der Grosse. Engaged from W. N. White & Co. Delivery March 4th. Goods: 6 cars Fr. Apples. Destination, Hamburg. North German Lloyd S. S. Company. * * * Receiving Clerk, North German Lloyd Piers, Hoboken: Receive for shipment per German steamship Kaiser Wilhelm der Grosse, on March 4th, the following goods for account of W. N. White & Co.: 1 car Fr. Apples. * * * Notice. Ship's receipt must be surrendered and bills of lading procured at the company's office"—did not amount to a contract creating the relation of carrier and shipper, but was no more than a mere offer to receive the apples on board the vessel, and lacked the requisite mutuality; and hence, where plaintiffs delayed delivery to the vessel, they could not recover damages for refusal of defendant to receive the apples on account of the vessel having been loaded to its full capacity.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 404–408; Dec. Dig. § 104.*]

2. SHIPPING (§ 104*)—CARRIAGE OF GOODS—CONTRACT FOR TRANSPORTATION.

The fact that defendant received one car load of the apples did not render it liable for its refusal to receive the balance of the shipment.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 404–408; Dec. Dig. § 104.*]

3. CARRIERS (§ 96*)—CARRIAGE OF GOODS—CONNECTING CARRIERS—DELIVERY TO CONNECTING CARRIER.

Although a permit issued by a steamship company designated March 4th as the date on which certain goods were to be delivered on the wharf for shipment, a railroad company transporting the goods to the wharf had no right to disregard the express directions of the shipper that the goods

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

should be delivered on the wharf in the forenoon of such day, and to rely on the statement of such permit; and where the railroad company delivered the goods in the forenoon, and they were refused by the steamship company on account of lack of room on the vessel, the railroad company was liable to the shipper for resulting damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 396–408; Dec. Dig. § 96.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by William N. White and another against the North German Lloyd Steamship Company and another. From a judgment of the Municipal Court, dismissing the complaint as to the defendant the Delaware, Lackawanna & Western Railroad Company, and an order setting aside a verdict in favor of plaintiffs against defendant North German Lloyd Steamship Company, plaintiffs appeal. Reversed as to order dismissing the complaint, and affirmed as to the order setting aside the verdict.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Charles Caldwell, for appellants.

Choate & Larocque (Joseph Larocque, Jr., and Cambridge Livingston, of counsel), for respondents.

FORD, J. Plaintiffs appellants desired to ship three car loads of apples, which had arrived at Hoboken via the line of the defendant railroad company and were destined for export on a vessel of the other defendant. Notices of the arrival of the apples were sent to the plaintiff White, who, in accordance with instructions stamped on the notices, procured through a shipbroker permits for loading them on the vessel. These permits, together with a check for the freight, the bills of lading, and the notices of arrival, he sent with a letter to the defendant railroad company before 2 o'clock in the afternoon of March 1, 1907. It appears that the identical permits were lost, but one like them, as issued by the steamship company, was admitted in evidence and is as follows:

New York, 2/28, 1907.

Per steamer Kaiser Wilhelm der Grosse.
Engaged from W. N. White & Co.
Delivery March 4th.
Goods: 6 cars Fr. Apples.
Destination, Hamburg.    North German Lloyd S. S. Company,
Oelrichs & Co., Gen'l Agents, 11 Broadway, N. Y.

New York, 2/28, 1907.
Receiving Clerk, North German Lloyd Piers, Hoboken:
Receive for shipment per German steamship Kaiser Wilhelm der Grosse, on March 4th, the following goods for account of W. N. White & Co.: 1 car Fr. Apples. For Hamburg, port of destination, via B. Haven.
Oelrichs & Co.

Every package must be plainly marked with port of destination.
Notice.—Ship's receipt must be surrendered and bills of lading procured at the company's office, 5 Broadway, N. Y., one or two days before sailing of the steamer. Custom house clearance for all goods required with bill of lading.
Attention of shipper is called to the following clause in the bill of lading:
"Also that merchandise on wharf or lighter awaiting shipment or delivery

be at the risk of the shipper or the holder of the bill of lading for loss or damage not happening through the fault or negligence of the owner, master, agent, or manager of the steamer or lighter, any local customs or privileges to the contrary notwithstanding."

Plaintiff White testified without contradiction that on the permits sent by him to the defendant railroad company, after the date "March 4th," he added the abbreviations "A. M." The letter accompanying those permits and addressed to the railroad company stated:

"Permits for the steamer Kaiser Wilhelm der Grosse, which can be taken alongside to-morrow afternoon or early Monday morning."

The railroad company delivered the three car loads of apples at about 3 o'clock in the afternoon on March 4th (which was Monday) alongside the steamer designated. The defendant steamship company accepted one car load, but refused to accept the other two. The vessel was to sail the next morning, and at the time the two car loads of apples were offered it had accepted so much other freight for shipment that there was not room for them. The two car loads of apples were on the cargo list, and those in charge of loading the ship waited for them until 1 o'clock on March 4th. Because they had not arrived by that time, other freight was accepted to the exclusion of two of the car loads of apples. The plaintiffs suffered loss in consequence of their failure to ship their apples on the vessel, and sued therefor. The complaint was dismissed as against the defendant railroad company, and a verdict found against the other defendant was set aside.

The cause of action against the steamship company is for breach of contract. The relation of shipper and carrier had not yet been established between the plaintiffs and that defendant as to the two car loads of apples in question. Upon the undisputed facts in the case it is perfectly clear that plaintiffs' contention can be sustained on no other theory. If they had based their suit upon the mere failure of the steamer to receive their goods, relying upon the law governing common carriers and defining their obligations toward the public, the case of Fowler v. Liverpool & C. Co., 87 N. Y. 190, would be sufficiently decisive to defeat their claim. To succeed at all against the steamship company they must show a binding contract between themselves and that company obligating the latter to enter into the relationship of shipper and carrier by receiving the apples when they were tendered at 3 o'clock on March 4th. Was there such a contract?

Plaintiffs insist that there was. I am of opinion that there was not. The permits, on which plaintiffs rely, were mere instrumentalities of convenience, employed by the steamship company to facilitate the classification, distribution, and loading of the cargo. They obligated the plaintiffs in no way. They could be revoked at any time before the plaintiffs offered their goods for shipment. Until that time there could be no certainty on the part of the steamship company as to whether the apples would arrive or not, and it had no assurance that, if it should reserve space for them to the exclusion of other freight and thus be obliged to leave port without a full cargo, it would be reimbursed for its loss by the plaintiffs. At most the permits constituted an offer by the defendant steamship company to receive the apples

on board its steamer, but did not bind the plaintiffs to deliver them. It therefore lacked the element of mutuality and could not bind the defendant. To this effect are Chicago & C. Co. v. Dane, 43 N. Y. 240, and a long line of decisions in which that case is cited with approval. The Appellate Division of the Second Department, in Pomeroy v. Newell, 117 App. Div. 800, 102 N. Y. Supp. 1098, holds that such an offer, being without consideration, may be withdrawn at any time. In that case it was held that an option, unsupported by a consideration, to sell real estate, would be withdrawn by a sale of the property to another purchaser during the period of the option. It cites as authority, among other cases, that of Dickinson v. Dodds, L. R. 2 Ch. Div. 463, a leading English case. Its facts are as follows, as given in Chitty on Contracts (14th Ed.) pp. 11, 12:

"The defendant, on Wednesday, a 10th of June, handed to the plaintiff a signed memorandum by which he agreed to sell to the plaintiff his house and garden at Croft for £800, adding a signed P. S.: 'This offer to be left over until Friday, 9 o'clock a. m. 12th June.' On Thursday the defendant sold the property to another person, and on Friday, about 7 a. m., both the plaintiff's agent and the plaintiff handed notices of acceptance to the defendant."

The plaintiff thereupon brought suit for specific performance, and obtained judgment, which was reversed by the Court of Appeal; James, L. J., observing:

"There was no consideration for the promise, to whatever extent it may be considered binding, to keep the property unsold until 9 o'clock on Friday morning; but apparently Dickinson was of opinion, and probably Dodds was of the same opinion, that he (Dodds) was bound by that promise until 9 o'clock on Friday morning. But it is settled law that this promise, being a mere nudum pactum, was not binding, and, at any moment before a complete acceptance by Dickinson of the offer, Dodds was as free as Dickinson himself."

In the case before us the defendant steamship company waited until 1 o'clock on the last day for loading freight, and then accepted other freight in place of that of the plaintiffs, which had failed to arrive up to that time. It was under no more obligation to reserve the space until the apples arrived than was Dodds to hold his property for Dickinson. See, also, Ganss v. Guffey, etc., 125 App. Div. 760, 110 N. Y. Supp. 176. That it did accept one of the three car loads of apples at 3 o'clock was a favor to the plaintiffs, which may not serve as ground for punishing it for not extending additional courtesies.

As to the defendant railroad company, in whose behalf no brief was filed, I am of opinion that the dismissal of the complaint as to it was error. After the notices of arrival reached the plaintiff White, he gave clear and explicit instructions to deliver the apples to the steamer Monday forenoon, March 4th. These instructions should have been followed, and, if followed, the apples would clearly have reached the steamer in time to be taken aboard. It had no right to substitute its own judgment that delivery at any time during March 4th would do in place of those explicit directions. Mr. White's letter accompanying the permits, sent on March 1st before 2 o'clock, clearly designated "to-morrow [Saturday] afternoon or early Monday morning" as the time when the apples should be alongside the steamer in order to be loaded. Moreover, he wrote the abbreviations "a. m." after the

words "March 4" on the permits as an extra precaution against a too late delivery. The railroad company had no right to take the language of the steamship company, which appeared on the permits, for their guidance, and disregard the written directions of the plaintiffs, which appeared thereon and in the letter which accompanied them. It was to their shippers, the plaintiffs, to whom it should look for instructions concerning their property, and not to a third party, with whom, so far as the apples were concerned, it had no contractual relations. If it undertook to deliver them at all, it should have delivered them within the time designated by plaintiffs. If the instructions to it came too late for delivery within the time specified without unreasonable effort on its part, it might have held the apples and stood upon its legal rights. Enough was shown to put the railroad company to its proof that its failure to deliver on time occurred without fault on its part.

The order dismissing the complaint as to the defendant railroad company should be reversed, with costs to the appellants to abide the event, and the order setting aside the verdict for the defendant steamship company and the judgment entered thereon should be affirmed, with costs to the respondent steamship company. All concur.